UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH HONEYWELL | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 07-CV-66-SAJ ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Joseph Honeywell ("Plaintiff"), appeals the decision of the Commissioner denying him disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff alleges that the ALJ erred by(1) failing to accord proper weight to treating source statements pursuant to Social Security Ruling ("SSR") 96-2p; (2) failing to re-contact a treating source providing a medical opinion on an issue reserved for the Commissioner as required by SSR 96-5p; (3) failing to properly apply the Medical Vocational Guidelines (Grid) set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 2; (4) neglecting to analyze obesity as a contributing factor to Plaintiff's disability as required by SSR 02-1p. For the reasons discussed below, the Court hereby affirms the Commissioner's decision.

### I. FACTUAL AND PROCEDURAL HISTORY

Claimant was born on January 4, 1956, and was 50 years old at the time of the administrative hearing. (*E.g.* R. 29, 89, 358.) The record indicates that Plaintiff may have

---

[1] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

reported having an ninth grade education and/or a general equivalency diploma but, at the administrative hearing, he stated that he only completed the seventh grade. (R. 136, 182, 362, 381.) He has past relevant work experience as a janitor, maintenance supervisor, and owner/operator of a small business. (R. 114, 138, 140-41, 362, 380-82.) He alleged that he became disabled on June 1, 2003, due to congestive heart failure, back problems, and high blood pressure. (*See* R. 89-94, 130.) Nonetheless, he was able to operate his sales and surplus store through August 2003. (R. 25, 138.)

Claimant protectively filed his application for disability insurance benefits and supplemental security income on July 12, 2004. (R. 89-94.) After he was denied benefits at the initial and reconsideration levels, he filed a timely Request for Hearing. Administrative Law Judge ("ALJ") Charles Headrick held a hearing on January 12, 2006 (*see* R. 353-87) and issued a denial decision on February 24, 2006. (R. 20-30). Plaintiff filed a Request for Review with the Appeals Council, but the Appeals Council denied his request on December 1, 2006. (R. 5-8.) He now seeks judicial review.

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . .

42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy, . . . .

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).[2/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. See 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206

---

[2/] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.3d 1368, 1371 (10th Cir. 2000); see *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750.

"The finding of the Secretary[3] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750. This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### III. ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found, among other things, that Plaintiff had the following severe impairments: hypertension, coronary artery disease, diabetes mellitus, and obesity. (R. 26.) However, the ALJ also determined that Plaintiff did not have impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*) The ALJ assessed Plaintiff's residual functional

---

[3] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

capacity (RFC) as follows: Plaintiff can occasionally lift 10 pounds and frequently lift less than 10 pounds; Plaintiff can stand and/or walk 2 hours in an 8-hour day; and Plaintiff can sit for 6 hours in an 8-hour day. (*Id.*) The ALJ deemed Plaintiff unable to perform any past relevant work, but other jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 28-29.) Accordingly, the ALJ concluded that Plaintiff had not been under a "disability" as defined in the Social Security Act, from June 1, 2004, through the date of the decision. (R. 30.)

## IV.  REVIEW

### A.    Weighting a Treating Source Statement

Plaintiff alleges that the ALJ erred by failing to accord proper weight to treating source statements pursuant to Social Security Ruling ("SSR") 96-2p.[4] In particular, Plaintiff faults the ALJ for failing to give the opinions of Dr. Martin T. Cooper, M.D., controlling weight or the greatest weight of any opinion in the record. On January 31, 2005, Dr. Cooper opined that Plaintiff was "temporarily totally disabled with regards to work because of health problems." (R. 70, 220.) As the ALJ noted, this letter and Dr. Cooper's notes are replete with references to Plaintiff's lack of insurance and need for insurance to obtain medications and tests, as well as references to Dr. Cooper's desire and efforts to help Plaintiff obtain insurance. (*See* R. 70, 193, 196, 220, 233, 235, 237, 239, 241.) In the January 31, 2005 letter, for example, Dr. Cooper wrote: "I am writing this letter to see if we

---

[4] Although Social Security rulings do not carry the force of law, they are generally entitled to deference because "they constitute the Social Security Administration's interpretations of its own regulations and the statute which it administers." *Walker v. Sec'y of Health & Human Servs.*, 943 F.2d 1257, 1259-60 (10th Cir. 1991).

can get him on disability, so he can get some health coverage, so we can get these investigations done and try to stabilize his medical condition." (R. 70, 220.)

For purposes of obtaining disability benefits, an individual's inability to afford medical treatment is not a sufficient basis for a treating source's medical opinion that the individual is disabled. SSR 96-2p emphasizes that:

> 1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.
> 2. Controlling weight may be given only in appropriate circumstances to medical opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.
> 3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.
> 4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.
> 5. The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.
> 6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted.
> 7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

*Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p, 1996 WL 374188 at *1 (S.S.A. July 2, 1996). Tenth Circuit case law is in accord. "The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

The ALJ in this case reviewed and discussed the medical evidence in the case record, including Dr. Cooper's own reports, and explained that Dr. Cooper's opinion was not entitled to controlling weight "because it is in conflict and inconsistent with the other substantial evidence as noted above." (R. 28.) The "substantial evidence noted above" included, in part, Dr. Cooper's notations on June 29, 2005, that plaintiff's blood pressure was 122/90; Plaintiff related a "little bit" of chest pain that could occur on rest or exertion and could last 5 to 10 minutes; and Plaintiff's condition was fairly stable and not getting any worse. (R. 27; *see* R. 237.) The ALJ also noted Dr. Cooper's report of November 20, 2003, when Dr. Cooper had not seen Plaintiff in a year and half. Plaintiff said he had been lifting his big screen television and had some pain in his lower back but, other than that, he had been feeling good. (R. 27; *see* R. 204.) The ALJ then noted Dr. Cooper's remarks about Plaintiff's diabetes based on glucose testing performed January 27, 2005, and he observed that Plaintiff was not taking diabetes medications. (R. 27; *see* R. 231-42). Finally, the ALJ referenced Dr. Cooper's progress notes regarding Plaintiff's obesity. (R. 28; *see* R. 232.)

The Tenth Circuit has emphasized that "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." *Watkins*, 350 F.3d at 1300 (quotations omitted). The ALJ performed his duty in this regard. In addition to his discussion of Dr. Cooper's records, the ALJ discussed the findings of the consultative examiners as well as Plaintiff's own testimony.

The ALJ did not err in refusing to give controlling weight to Dr. Cooper's opinion that Plaintiff was temporarily totally disabled.

Further, the ALJ did not err in failing to discuss Dr. Cooper's "Medical Source Statement." (*See* R. 247-49.) The statement is a form "Residual Functional Capacity Evaluation" showing Dr. Cooper's opinion of how Plaintiff's physical ability to perform work-related activities on a sustained basis in a work setting is limited. (*Id.*) Although Dr. Cooper signed the statement in November, 2005, Plaintiff's representative did not send it until the day after Plaintiff's hearing in January, 2006. (R. 246.) As the Commissioner points out, there is no evidence that the ALJ received the statement before he wrote the decision denying Plaintiff disability benefits; however, there is evidence that the Appeals Council properly considered and rejected it. (*See* R. 6.)

Social Security regulations require the Appeals Council to consider evidence submitted to it if it is "new and material" and "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); *see Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004); *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004). The Tenth Circuit has explained that the Appeals Council need not specifically discuss or expressly analyze new evidence as long as it is clear that the Appeals Council considered the additional evidence as part of its evaluation of the entire record to determine whether to review the case. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006). Like the Court in *Martinez*, this Court has reviewed the administrative record and it agrees with the Appeals Council that Dr. Cooper's statement does not warrant a reversal of the ALJ's opinion. *See id.* at 1208.

**B.       Re-contacting a Treating Source**

Nor does the ALJ's alleged failure to re-contact a treating source warrant a reversal of the ALJ's opinion. Plaintiff quotes from this paragraph in SSR 96-5p: "For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us." *Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner,* SSR 96-5p, 1996 WL 374183 at *2 (S.S.A. July 2, 1996). Stated more fully, the ruling provides:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

*Id.* at *6 (emphasis added).

Plaintiff argues that the ALJ made no effort to recontact Dr. Cooper in order to obtain clarification of the reasons for his opinion. This argument presupposes, however, that the basis of Dr. Cooper's opinion was unclear to the ALJ or that the ALJ could not ascertain the basis of the opinion from the case record. The ALJ's extended discussion of Dr. Cooper's remarks indicates that the ALJ did not find the doctor's opinion unclear and that the ALJ was able to ascertain the basis of the doctor's opinion that Plaintiff was disabled. An ALJ's decision to not give controlling weight to a treating source opinion does not obligate the ALJ to recontact the treating source. *See White v. Barnhart*, 287 F.3d 903, 908-09 (10th Cir. 2001) ("For it is not the rejection of the treating physician's opinion that triggers the duty to

recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from the claimant's treating physician' that triggers the duty." (quoting 20 C.F.R. § 416.912(e)).

**C.      Applying the Grid**

Plaintiff also argues that the ALJ failed to properly apply the Medical-Vocational Guidelines (Grid) set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 2.  In particular, he argues that the ALJ improperly classified his past relevant work as semi-skilled and, further, that the vocational expert's testimony regarding other jobs available in the national economy was inconsistent with the Dictionary of Occupational Titles ("DOT").[5]  Plaintiff first points out that, at the time of the hearing, Plaintiff was fifty (50) years old, which places him in the category of "closely approaching advanced age" within grid rule 201.10.  (*See* 20 C.F.R. §§ 404.1563, 416.963.)  In that category, an individual with a sedentary RFC, limited or less education, and no transferable skills is to be considered disabled.  Plaintiff testified that he only completed the seventh grade (R. 362), but the ALJ found that he had at least a high school education (R. 29).

When the ALJ questioned the vocational expert, however, his question assumed a hypothetical claimant with a seventh-grade education.  (R. 381.)  More importantly, the question assumed that the claimant was a 50-year-old male with a limited ability to use numbers and with the physical capacity to perform sedentary work.  (R. 381-82.)  The vocational expert testified that such a claimant could not perform his past relevant work as a small business owner, but would retain the following transferable skills from that work: dealing with the public, reading and writing reports, and inventory control. (R. 383.)  With

---

[5] U.S. Dep't of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed, rev. 1991).

those transferable skills, that claimant could perform work as an order clerk or an information clerk. (R. 382-83.)

Relying on the vocational expert's testimony, the ALJ found that grid rules 201.22 and 201.15 applied. These rules direct a finding of "not disabled" for either a younger individual between the ages of 45 and 49 or an individual closely approaching advanced age who is a high school graduate. 20 C.F.R. Pt. 404, Subpt. P. App. 2. Notably, grid rules 201.11 and 201.20 would also direct a finding of "not disabled" for a 49 or 50 year-old person of limited or less education who had transferable skills. (*Id.*) It is not clear whether the ALJ found that Plaintiff's testimony regarding his level of education lacked credibility, or whether the ALJ simply erred in stating that Plaintiff had a high school education. In any event, it is irrelevant as long as Plaintiff had transferable skills.

With regard to Plaintiff's past relevant work as a small business owner, he stated in his application materials that he "ran the store, mainly the register and cleaning." (R. 140.) He also indicated that he supervised employees but did not hire or fire them. (R. 141.) He testified at hearing that he and his wife sold merchandise in the store similar to the type of merchandise that they had previously sold at flea markets. (R. 364-65.) His duties "other than running the store," included stocking shelves and placing orders over the internet or by telephone. (R. 365.) Plaintiff argues that these duties equate to those of a sales attendant performing unskilled work. This argument contradicts the testimony of the vocational expert, and the ALJ had no valid reason to reject the opinion of the vocational expert in this respect. The Court will not reweigh the evidence accepted by the ALJ with regard to Plaintiff's past relevant work as a small business owner of a sales and surplus store.

Plaintiff also attacks the testimony of the vocational expert with regard to the kinds of jobs available in the national economy to which Plaintiff's skills would transfer. The vocational expert testified that, given Plaintiff's RFC, at least two jobs existing in significant numbers in the national economy that Plaintiff could perform: order clerk and information clerk. (*See* R. 382.) Plaintiff argues that these positions require a level of general educational development in mathematics which he does not possess. He testified that he could do "real simple, multiplication and division, but no fractions." (R. 362.)

Plaintiff points out that the position of order clerk in the DOT (§ 209.362-026) requires a general educational development ("GED") mathematics level of 3 to perform the duties of the position. This level of development requires that the individual be able to "[c]ompute "discount, interest, profit and loss; commission, markup, and selling price; ratio and proportion, and percentage"; [c]alculate surfaces, volumes, weights, and measures"; and perform basic geometry and algebra. *DOT*, App. C. Vol. II at 1011. The information clerk position (§ 237.367-022) requires a mathematical GED of 2. This level of development requires that an individual possess the following abilities: "Add, subtract, multiply, and divide all units of measure. Perform the four operations with like common and decimal fractions. Compute ratio, rate, and percent. Draw and interpret bar graphs. Perform arithmetic operations involving all American monetary units." *Id.*

Plaintiff argues that he cannot perform at either level required for an order or information clerk and, therefore, the testimony of the vocational expert that Plaintiff possesses the ability to function as an order clerk or information clerk contradicts the DOT. Further, he argues that the ALJ erred in failing to resolve the inconsistency. Plaintiff cites to SSR 00-4p in support of his argument.  SSR 00-4p  requires an ALJ to identify and

obtain a reasonable explanation for any conflicts between occupational evidence provided by a vocational experts ("VE") or vocational specialist ("VS") and information in the Dictionary of Occupational Titles. *Policy Interpretation Ruling: Titles I and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and other Reliable Occupational Information in Disability Decisions*, SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000) In addition, the ALJ must explain in the determination or decision how any conflict that has been identified was resolved. *Id.* at *1; *see Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005.)

The Court sees no conflict between the vocational expert's testimony and the DOT. The ALJ's hypothetical question to the vocational expert asked her to assume a claimant with limited ability to use numbers, and she testified that he could perform the positions of order clerk or information clerk. (R. 381-82.) There may be a conflict between Plaintiff's testimony as to his abilities and what the DOT requires of an order clerk or information clerk, but the ALJ found that Plaintiff's testimony was not entirely credible. (R. 28.) Given Plaintiff's explanation of his duties "running the store" and the vocational expert's testimony that he had retained at least three transferable skills from that job, the Court is inclined to agree. The ALJ properly applied the Medical Vocational Guidelines.

**D.     Analyzing Obesity**

Finally, Plaintiff maintains that his obesity increases the severity of his coronary artery disease, aortic stenosis, hypertension, and lower back pain. He alleges that the ALJ neglected to analyze obesity as a contributing factor to Plaintiff's disability as required by SSR 02-1p, *Evaluation of Obesity*, 2000 WL 628049 (S.S.A. Sept. 12, 2002). The agency ruling requires an assessment of "the effect obesity has upon the individual's ability to

perform routine movement and necessary physical activity within the work environment." (*Id.* at *6.)  In particular, the ALJ is required to explain how he reached his conclusion on "whether obesity caused any physical or mental limitations," and to "consider any functional limitations resulting from the obesity" in his Residual Functional Capacity ("RFC") assessment.  (*Id.* at *7.)

In reaching his conclusion that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listings, the ALJ stated that he had evaluated Plaintiff's obesity using the criteria set out in SSR 02-1p. (R. 26.)  Plaintiff asserts that this statement is conclusory and he faults the ALJ for failure to proceed without further analysis.  Plaintiff's argument ignores a full paragraph on obesity in the context of a lengthy evaluation by the ALJ regarding Plaintiff's residual functional capacity.  (*See* R. 27-28.)  The ALJ thoroughly discussed the medical evidence relating to Plaintiff's heart problems, back problems, and diabetes mellitus before observing:

> The claimant has been diagnosed with obesity and at one point weighed 304 pounds with a body mass index of 44.9.  When seen March 24, 2005, the claimant had lost 20 pounds. (Exhibit 12F)  Progress notes by Dr. Cooper dated November 16, 2005, reflect that the claimant's weight was 290.4 pounds.  It does not appear that the claimant's obesity has resulted in significant functional limitations, and the claimant should be able to occasionally lift 10 pounds, frequently lift less than 10 pounds, stand and walk 6 hours in an 8-hour day, and sit for 6 hours in a n 8-hour day.

(R. 28.)  The ALJ then proceeded to evaluate Plaintiff's credibility and Dr. Cooper's unsubstantiated opinion as to the severity of Plaintiff's alleged disability. (*Id.*)  Plaintiff's argument that the ALJ neglected to properly analyze Plaintiff's obesity is not well-founded. The Court finds no error in the ALJ's analysis of Plaintiff's obesity.

## V. CONCLUSION

The Commissioner's decision denying Plaintiff's application for Social Security benefits shows that the correct legal principles have been followed and is supported by substantial evidence. Accordingly, the Court affirms the Commissioner's decision.

It is so ordered this 15th day of April, 2008.

Sam A. Joyner
United States Magistrate Judge